**Robert Eauntan BUFFORD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 41099.**

Court of Criminal Appeals of Texas.

March 6, 1968.

Rehearing Denied April 10, 1968.

David Candish, Dallas (by Court appointment), for appellant.

Henry Wade, Dist. Atty., Joe Max Nendley, Kenneth E. Blassingame and Kerry P.

FitzGerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Murder with Malice; the punishment, assessed by the jury, 45 years confinement in the Texas Department of Corrections.

Appellant, in his sole ground of error, challenges the sufficiency of the evidence to sustain his conviction.

The record reflects that on a street in the city of Dallas during the early morning hours of Christmas Day, 1965, Geraldine Murrell, a woman with whom appellant had been living, suffered a gunshot wound from which she succumbed.

It appears that the appellant, also known as Pete, returned after 10 p. m. to the home of Roberta Rosebud on Christmas Eve following a round of beer drinking. At such time appellant was heard by a witness to inquire of the deceased, who was present, "why she wasn't at home," and "what was she doing there with her boy friend." An argument ensued and appellant and the deceased retired to a back room. Shortly thereafter this same witness heard the deceased ask appellant, "why did he hit her," to which the appellant was heard to respond, "Well, you hit me and I hit you," though the witness did relate that when they returned to the main room of the house they had "stopped arguing and seemed to be okay."

Corrine Morgan, the same State's witness referred to above, further testified she left the Rosebud residence with the appellant and the deceased near midnight. She related that she was walking approximately 20 feet ahead of the others when she heard the deceased ask the appellant, "did he think that she is going to let him beat her because he is taking care of her," and that then a shot was fired.

Upon hearing the shot, the witness Morgan related she turned and saw the deceased on the ground, and upon approaching her observed a bullet wound in the deceased's left side and heard her say, "Pete has shot me."

Perry Goodall, a City of Dallas Police Officer, testified that shortly after midnight on December 25, 1965, he had observed the threesome described above walking on Merlin Street, and that soon thereafter he saw the same threesome in the 2900 block of Ash Lane, but this time the witness Morgan and the appellant appeared to be assisting the deceased.

In response to Officer Goodall's inquiry if the woman had had too much to drink, appellant replied in the affirmative, but later told the officer she had been struck by a Mercury automobile. After walking to the end of the block with Officer Goodall, appellant pointed to an entirely different make of automobile parked in a nearby shopping center. At such time Goodall returned to the two women where he discovered the deceased had been shot, found a .22 caliber revolver on a coat lying on the ground nearby, and then observed that the appellant had fled the scene.

Responding to Officer Goodall's call and description of the appellant, two other police officers arrested the appellant and returned him to the scene.

Dr. E. F. Rose, Dallas County Medical Examiner, testified Geraldine Murrell died of a gunshot wound of the liver, that the blood alcohol content in her body was 0.046 per cent, or "about two 12-ounce bottles of 4 per cent beer."

Testifying in his own behalf appellant admitted he had a brief argument with the deceased at the Rosebud house, but contended that it had ended before they left for home. He related that he was attempting to change the .22 caliber revolver that he was carrying home for a friend from one of his pockets to another when it accidentally discharged, shooting the deceased.

He denied that he had inquired about the deceased's boyfriend or that the deceased made the statement attributed to her by the witness Morgan just prior to the fateful Yule time shooting.

He stated that he left the scene after the officer's arrival because he was afraid, and because earlier in the evening the deceased had informed him that he was wanted by the police for failure to make child support payments. He admitted a previous conviction for assault to murder.

Willie Biggins, who had previously been convicted of five felonies, testified for the appellant and claimed ownership of the revolver in question. He related that when he and the appellant had left the Rosebud residence early on Christmas Eve night to go beer drinking that he had hidden the pistol so that it would not be on him in case of an arrest; that he had requested appellant to retrieve it from its hiding place and carry it home since they lived at the same address. He testified that some three weeks earlier that the revolver had accidentally discharged shooting him in the leg.

Another defense witness corroborated Biggins' statement as to the earlier accidental discharge of the revolver.

Roberta Rosebud, a defense witness, stated that the deceased made a dying declaration in the ambulance on the way to Parkland Hospital to the effect, "Don't let them do anything to Pete; he didn't do anything to me."

In rebuttal, the State offered the testimony of Lt. F. T. Alexander of the Dallas City Police, a firearm expert, who related that he had conducted multiple tests on the gun in question and had determined from some 30 tests that the average trigger pull on the revolver was 3–½ pounds for each test, which was normal for a gun of that size; that a trigger pull of a pound or less is dangerous; that he had been unable to cause the revolver to accidentally discharge and he could find no other way to fire the weapon other than pulling the trigger.

The trial court charged the jury on the defensive theory of accident, and in viewing the evidence in the light most favorable to the State as we are required to do, we deem the evidence sufficient to support the jury verdict.

The judgment is affirmed.